GARRET LEFEVER *v.* NATHAN LEFEVER.

The plaintiff, a director in a bank, who had been such from its organization,
who usually attended the meetings, and was actually present and took part
in the proceedings of the board of directors when the last dividend was
declared, having purchased from the cashier of the institution twenty
shares of the capital stock, brought an action to have such contract
rescinded, and to recover back the money paid, on the ground of false
representations and concealments of the cashier, as to the value of the
stock and the condition of the bank, at the time of the purchase : *Held*,
that the plaintiff was not estopped from setting up his actual ignorance
of the condition of the bank at the time of the sale.

That although the purchaser was a director of the bank, having the means
of knowledge, he was not in the particular transaction chargeable with
notice of the condition of the bank.

That if he was *actually ignorant* of its condition, the fraudulent vendor
would be equally responsible to him for the deceit as to any stranger to
the institution.

That it was not a case in which the plaintiff was legally bound to know the
truth or falsity of the vendor's representations.

*Held, also*, that the evidence in such action plainly showing that at the time
of the alleged sale and transfer of the stock, on the 29th of August, 1857,
the bank was, by the application of all the *ordinary* tests, sound, solvent
and prosperous, and the stock worth all that the defendant had repre-
sented it to be, the plaintiff could not be allowed to show the contrary by
introducing in evidence what purported to be a certified copy of proceed-
ings had in November, 1857, on the petition of certain stockholders, for
the re-establishment of the bank.

THIS action was of a novel character.  A director of a
bank (who had been such from its organization, who usually
attended the meetings and was actually present and took
part in the proceedings of the board of directors when the
last dividend was declared), having purchased from the
cashier of the institution twenty shares of its capital stock,
asked to rescind such contract and recover back the money
paid, on the ground of false representations and conceal-
ments of the cashier as to the value of the stock and the
condition of the bank at the time of the purchase.  The

cause being tried by a referee, he found that at the time
of negotiating the sale and transfer of the stock (viz: on
the 29th August, 1857), the defendant falsely represented
that the bank was then sound and solvent and in a flourish-
ing condition; that the stock was then worth one hundred
and five cents to the dollar, and the then accruing dividend;
and that the bank then had no bad or protested paper, each
of which representations was known by the defendant to
be false at the time it was so made.  That their truth or
falsity (except as to certain paper held by the bank) was
unknown, in fact, to the plaintiff, and that the plaintiff relied
on the representations in making the purchase of the stock.
He further found that on the 2d September, 1857, the
drafts of the bank, drawn on the Nassau Bank, the redeem-
ing agent of the Huguenot Bank, were protested to the
amount of several thousand dollars; that on the 17th Sep-
tember, 1857, the bank was legally declared insolvent, and
that on the 27th September, the plaintiff tendered to the
defendant a reassignment of the stock, and demanded a
repayment of the sum of $2,123.33, the amount paid there-
for.  The judgment of the referee upon these facts was
that the plaintiff was entitled to have the contract of sale
rescinded, and to recover back from the defendant the sum
paid for the stock, with interest.  That judgment having
been affirmed at a general term of the supreme court, the
defendant appealed to this court.

*John K. Porter*, for the appellant.

I. The plaintiff, as an officer of the bank, entrusted with
the supervision and management of its affairs, and with
full means of knowledge of its condition, cannot make title
to damages, through his neglect of duty and inattention to
his trust.

1. Want of notice of the condition of a bank is not
available to one who is bound as a director to know its

condition.  By accepting that office, he assumed a duty to
the stockholders and creditors of the bank, to inform him-
self of what would appear by an inspection of the books
of an institution of which he was one of the ostensible
managers; and he cannot found an action on his own neglect
of duty.  (*Gillet* v. *Phillips*, 3 Kernan, 117; *Ketchum* v.
*Bank of Commerce*, 3 Am. Law Regr. 168.)

2. The plaintiff having the means of knowlege is charge-
able with notice, and cannot complain of being misled as a
consequence of his own negligence.  (*Kennedy* v. *Green*,
3 Mylne & Keene, 719, 721; *Carr* v. *Hilton* 1 Curtis' C. C.
R. 390.)

II. The referee erred in admitting the evidence to which
he gave effect in his report.

1. The admission of the certified copy of the proceed-
ings upon the re-establishment of the bank was especially
mischievous; and it was plainly immaterial to the true
issue, and incompetent as against the defendant.

2. So far as he was concerned, the statements in the peti-
tion were merely hearsay, many of them upon the informa-
tion and belief of the petitioners, who were themselves
competent witnesses.

3. The introduction under the prior ruling, of the defend-
ant's testimony before a referee, on a specific inquiry foreign
to the issue on the trial, was in itself sufficiently objection-
able; but to this was superadded the testimony of the
receiver on that occasion, a witness not sworn on the trial.

4. The estimates of the referee, as to the amount and
value of the then assets of the bank, were thus brought
in, as material and competent evidence as to the truth of
the defendant's representations in regard to the condition
of the bank on the 29th of August, 1857.

5. There was no authority in law for the introduction of
a certified copy of proceedings of that character.

6. So far as the legal rights of the defendant were con-
cerned, these proceedings were *res inter alios acta.* (*Darrin*

v. *Hatfield*, Selden's Notes, Dec. 1852, 36; *Verplanck* v. *Mercantile Ins. Co.* 2 Paige, 438.)

7. The evidence of subsequent losses by the bank by compromises, made by the plaintiff and the other directors, and not by the defendant, was equally irrelevant and incompetent.

*M. Schoonmaker*, for the respondent.

Upon the facts as found, the referee was right in adjudging that the plaintiff was entitled to have the contract of sale, set forth in the proceedings, rescinded, and recover back, from the defendant, the sum paid for the stock with interest.

I. By the facts found, it expressly appears that in negotiating the sale, and at the actual sale and transfer of twenty shares of the Huguenot Bank stock, by the defendant to the plaintiff, the defendant made false representations to the plaintiff and his agent, upon existing and material facts, knowing them, at the time, to be false, and that the plaintiff was thereby deceived and induced to make the purchase. The principles of law are familiar and well established, and founded in justice, that whenever a vendor, in the sale or negotiation for the sale of goods, or property, affirms that which he knows to be false, or does not know to be true, to another's loss and his own gain, he is responsible in damages, or the contract may be rescinded. The one who misleads or abuses the confidence of another, by false statements, in the substance of a purchase, shall be the sufferer instead of his victim. And even if by concealment of known facts the vendor violates any trust or confidence reposed in him by the buyer, the sale is fraudulent and may be rescinded. (*Upton* v. *Vail*, 6 Johnson, 181; 1 Story on Contracts, § 506, page 608 and note; 1 Story Equity, § 192; 2 Story on Contracts, § 842.)

II. The plaintiff is not, by reason of his being one of the

directors of the bank, estopped from setting up in this suit his actual ignorance of the affairs, situation and condition of the bank and the value of its stock.

1. The doctrine of estoppel against a director applies to cases where he is sought to be made liable by the people or strangers, either for omissions or commissions, by himself or his agents, in connection with the affairs and business of the bank. In such case it is founded upon well settled principles of public policy, which will not allow a person to hold himself out to the world as the director or manager of an institution, and then, when sought to be made liable by the people, or creditors of the institution, avail himself of the plea of ignorance, to repudiate the acts or omissions of himself or his agents. It is also upon the further principle that the cashier and other officers of the bank, are the agents of the directors, and the directors are as between them and third parties, held responsible for the acts of their agents.

2. This case is one of a very different character; it is a dealing between a director and cashier, in relation to some of the stock of the bank, and a negotiation in relation to its sale and transfer by the cashier to a director. It is not a matter at all connected with the business of the bank, or its management. On the one side was the defendant, the cashier and financial agent of the institution, whose special business it was to manage its pecuniary affairs, take the immediate charge, personal superintendence and control of its business generally and particularly, and keep an accurate account and knowledge of its assets, loans and liabilities, and all other matters essential to be known, to ascertain the value of the stock and the condition of the institution. On the other side was the plaintiff, one of the directors, who, as the cashier well knew, took no part in the management of the institution; was not upon any of its business committees; had no means of information or knowledge in relation to the condition or affairs of the

bank, other than that which he was able to obtain from the cashier himself, or from an inspection of the books and papers, kept by the cashier in his. immediate possession and control; and who, at the outset, notified the cashier that he knew nothing about the condition of the bank or value of its stock, and depended entirely upon his representations as a guide. There is not, therefore, in this case, any ground or propriety for the application of the principle of estoppel, and the rules of public policy governing the liability of directors in other cases.

III. No errors occurred on the trial in relation to the admissibility of evidence, or otherwise, to entitle the defendant to a new trial, and the several exceptions taken by the defendant, in the course of the trial, to the admission of evidence, were not well taken.

1. In stating the transaction, negotiations and contract, in reference to the sale and transfer of the stock, it was right that the entire conversation should be given, and there was no error in the admission of testimony.

2. Subsequent conversations and transactions are proper evidence for many purposes; among others: To corroborate plaintiff's version of the transaction; to show falsity of representations; to show injury in fact derived from the misrepresentations; to show that a large amount of assets were bad and unavailable; to show knowledge on the part of defendant; and many other material facts.

3. The action being based upon fraud in the sale and fraud in the warranty and representations, the referee was right to refuse to strike out the testimony of Garret and Jacob Lefever.

4. The testimony of Nathan Lefever, given before a referee, was properly introduced and admitted as a declaration or admission of his.

5. The proceedings in the matter of the Huguenot Bank, were proper evidence for various purposes: To show the time that bank went into hands of a receiver; to prove allega-

tions in the complaint; to show declarations and admissions of defendant. It was necessary to introduce the whole record, or the paper would have been incomplete.

6. The cross-examination of Eltinge and others, in reference to the Murray and Davis, and the Barculo and other papers, among the bills receivable, and the responsibility of the parties to the paper, was proper in reference to the value of the assets of the bank, and to test the accuracy of Eltinge's estimate, as to such value. Also, to test the correctness of his evidence upon his direct examination, that $10,000 would cover all losses since August 29, 1857, which, if proper for defendant to prove, was proper for plaintiff to disprove. Objections to such testimony were properly overruled.

IV. The motion for a non-suit was properly denied. The plaintiff had proved sufficient to entitle him to recover.

V. This court has no power on appeal to examine into the correctness of the findings of fact by the referee. Its power is limited entirely to questions of law arising upon the trial, and upon the facts as found and established by the referee. (Code, § 268; *Dunham* v. *Watkins*, 2 Kernan, 556.)

WRIGHT, J. The representations made by the defendant, which the referee finds to be untrue, and on which the plaintiff relied, he being ignorant in fact of their truth or falsity (except as to certain protested paper), related wholly to the condition of the bank and the value of its stock. One of the questions is whether the plaintiff, being a director of the bank, entrusted with the supervision and management of its affairs, is estopped, in a suit of this character, from setting up his actual ignorance of the condition of the bank. In any matter or controversy connected with the business of the bank, or its management, it is clear that want of notice of its condition would not be available to him. Upon well settled principles of public policy, he

3

would not be allowed to hold himself out to the world as the director or manager of an institution, and then, when sought to be made liable by the people or creditors of the institution, avail himself of the plea of ignorance to repudiate the acts or omissions of himself or his agents. But this case has no relation to the business of the bank or its management. It was simply a sale of stock by one officer of the bank to another; and, although the vendee was a director, having the means of knowledge, he was not in the particular transaction chargeable with notice of the condition of the bank. If he was *actually ignorant* of its condition, the fraudulent vendor would be legally responsible to him for the deceit as to any stranger to the institution. It was not a case in which the plaintiff was legally bound to know the truth or falsity of the defendant's affirmations.

On the trial the solvency and prosperous condition of the bank, and the value of its stock, were important inquiries. If the defendant's representations were not false in these respects when made, then there was no ground for the action. The evidence showed very plainly that on the 29th August, 1857, the time of the alleged sale and transfer, the bank was, by the application of all the *ordinary* tests, sound, solvent and prosperous, and the stock worth all that the defendant had represented it to be. But the referee holds that the plaintiff might show, by indirection, and the merest hearsay testimony, that the facts were otherwise; and having received the evidence, he gave effect to it in his report. Accordingly he allowed the introduction, under objection, of what purported to be a certified copy of the proceedings had in November, 1857, on the petitions of certain stockholders for the re-establishment of the bank. Among the papers thus admitted was the petition of the stockholders, stating, on information and belief, the amount of bills receivable; assuming to state the inadequacy of the available fund to pay the debt

of the bank to the state treasury, and avoiding it by
alleging the responsibility of the sureties; representing
many of the debtors of the bank as embarrassed and crippled
by the commercial revulsions, and stating the petitioners'
apprehension of disaster from the judicial administration
of the fund, under the receivership. Another of the papers
was the deposition of the receiver of the bank, embodied·
in the report of the referee. In this was stated the facts
of the protest of $11,150 of the bills by the Nassau Bank,
and that the amount of bills receivable was $27,000.
Appended to the referee's report was his estimate that from
one-eighth to one-quarter of the bills receivable would
prove uncollectable; his estimate of the then amount and
value of the bank assets; also the receiver's accounts,
showing the large expenses incident to the receivership,
the sacrifice of the New York state stocks at panic prices,
ranging from eighty-seven and one-half cents to ninety-five
cents, and other losses of a kindred character.

To these proceedings in the matter of the bank, the
defendant was in no sense a party. It may be that by com-
petent evidence the plaintiff would have been allowed to
show the condition of the bank in November 1857, with the
view of falsifying the defendant's representations of its con-
dition in August, 1857. But this would be allowing a wide
range of examination even where the question involved
was one of fraud. It was especially mischievous in this
case; for between the date of the contract and November,
1857, the great commercial revulsion and panic of that year
had occurred, and was at its height, unsettling commercial
values, crippling and embarrassing all classes pecuniarily,
occasioning a suspension of specie payment by all the
banks, and prostrating temporarily even the state credit.
If such a latitude of investigation, however, was permissible,
it could only be pursued by the introduction of competent
proof. The petition of the stockholders to re-establish
the bank, the affidavit of the receiver, and the estimates

of the referee, as to the amount and value of the then assets of the bank, were clearly incompetent as against the defendant. So far as he was concerned, the statements in the petitions were mere hearsay, many of them upon the information and belief of the petitioners, who were themselves competent witnesses. This was also the character of the affidavit of the receiver before the referees (a witness not sworn on the trial), and of the estimates of the referee as to the amount and values of the assets of the banks in November, 1857. Instead of swearing witnesses on the trial as to the condition of the bank, and the value and amount of its assets, when taken out of the hands of the receiver, (regarding such evidence as material and competent on the question of the truth or falsity of the defendant's representations in respect thereto, made in August, 1857,) the referee allowed second hand proof of the facts; and what is quite apparent, in a degree, at least, based his report upon such proof. It may not have been strictly objectionable to have allowed the affidavit of the defendant, embodied in the report of the referee, to be introduced with the view of showing his declarations and admissions; but on no principle was the testimony of the receiver, the hearsay testimony of certain stockholders of the bank, and the estimates of the referee as to the amount and value of its assets, in a process between other parties, admissible. It is urged that the record of the proceedings was proper evidence to show the time that the bank went into the hands of a receiver, and the declarations and admissions of the defendant, and that it was necessary to introduce the whole record, or the paper would have been incomplete. Suppose, however, it was incomplete, it could certainly be no reason for the introduction of improper evidence. If it were a proper way to prove the fact that the bank went into the hands of a receiver, on the application of some of its stockholders, on the 18th September, 1857, it could have been shown by the order or decree of the judge; and

if the declarations or admissions of the defendant as to the condition of the bank, made in a proceeding to re-establish the institution, were competent evidence, his affidavit containing these declarations and admissions, could have been introduced. Indeed, it was introduced and admitted, under objection, before the other papers were received.

I am of the opinion, therefore, that the referee erred in admitting as evidence what is called in the case a certified copy of the proceedings upon the re-establishment of the bank, except perhaps the order of the court appointing a receiver and the testimony of the defendant before the referee, embraced therein. The referee found that the representation of the defendant that the bank was in a sound, solvent and prosperous condition in August, 1857, was false, and the defendant knew it; but the statement of persons not sworn on the trial, and in fact the unsworn statement of one as to the condition of the bank in November, 1857, were not competent evidence on which to base such a finding of fact.

The judgment of the supreme court should be reversed, and a new trial ordered, with costs to abide the event.

INGRAHAM, DAVIES, SELDEN, MULLIN and JOHNSON, JJ., concurred.

HOGEBOOM, J. (dissenting.) This action was brought to recover back money paid on a transfer of twenty shares of the Huguenot Bank, on account of false and fraudulent warranty and representations and concealment as to the condition and value of the stock and assets and protested paper of the bank. The case was referred to a referee. The evidence was conflicting. The referee found on sufficient and apparently preponderating evidence, that the alleged representations were made; that they were false in fact; that they were in effect fraudulent, that is made with knowledge on the part of the defendant of their falsity; and that the plaintiff relied upon them in making the pur-

chase of the stock. The supreme court at general term, affirmed the judgment. I discover no ground upon which *on the merits* this decision can be disturbed. Even if it were open to review in this court upon the facts, the evidence is of such conflicting character, as makes it proper to sustain the decision of the original tribunal on the question of facts.

The real difficulty, if any, arises on the admission of evidence by the referee, and in this particular he is supposed to have committed grave errors. The more important of these, as alleged, consist in the admission of evidence of the proceedings connected with the insolvency of the bank and the judicial declaration of that fact; the appointment of a receiver; his subsequent removal, and the testimony of the defendant taken before a referee in those proceedings. To determine these facts correctly, it will be necessary to look with some care into the case, and observe the manner in which, and the purposes for which this testimony was introduced.

The plaintiff having introduced his own testimony, and that of his son and one or two other witnesses, as to the representations and declarations of the defendant, and of a clerk of the bank as to its condition, assets, debts and papers, offered to read in evidence the testimony of the defendant, Nathan Lefever, taken before J. B. Jewett, the referee in the matter of the Huguenot Bank, in pursuance of an order granted therein November 9th, 1857, as reported by said referee in his report, dated November 19th, 1857.

"The defendant objected (to the offered evidence) upon the ground that it was taken after the suspension of the bank, and related to the condition of things then existing, and at the time of the sale of the stock, and that it was improper and immaterial to any of the issues in this action. The objection was overruled by the referee, and the evidence received, subject to any objection that might be thereafter raised to the same; to which decision the defendant

excepted. The plaintiff then offered in evidence a certified copy of the proceedings upon the re-establishment of the bank. The defendant objected to the introduction of the evidence, upon the ground of its immateriality, and that it was an improper mode of proving the misrepresentations alleged in the complaint. The referee overruled the objection, and admitted the evidence, subject to any objections on the part of the defendant that might be thereafter made; defendant excepted to the decision."

The proceedings thus far stated in regard to the offer, objection and admission of this evidence are stated in the language of the case. Immediately following this statement, and without any further or intervening matter, the case contains and gives in detail the following papers, apparently, so far as we can judge, forming one entire and connected series, to which a single certificate of attestation is attached. These papers are as follows:

1. A petition of stockholders of the bank stating its actual or apprehended insolvency, and praying for an injunction and receiver.

2. An order for a temporary injunction, and to show cause why it should not be continued and a receiver be appointed.

3. An absolute order of injunction and for receiver.

4. A petition praying for an order vacating the injunction and appointment of receiver.

5. Various consents of stockholders and creditors and others to such last named order.

6. An order of reference to Jacob B. Jewett to inquire and report as to the matters of the last named petition.

7. Notice of motion for an absolute order on said petition, and on the referee's report.

8. Report of referee last referred to, in which report is embodied the testimony of the defendant, *Nathan Lefever*, and the receiver, John Sleight.

9. An order vacating the order granting the injunction

and appointing the receiver, and making provision for taking the account of the receiver before the same referee, with other directions.

10. Report of referee under last named order.

11. Certificate of referee that the receiver had complied with the requisitions of the last named order, and paid over the moneys in his hands.

12. Certificate of the clerk of Ulster county, that he had compared the foregoing with the originals on file in his office, and that they were true copies.

The only ground of objection made to the offered evidence of the defendant's testimony was "that it was taken after the suspension of the bank, and related to the condition of things then existing, and not at the time of the sale of the stock, and that it was improper and immaterial to any of the issues in this section." This, of course, did not embrace an objection to the form in which it was presented, as that it was one of a connected series of papers, and should be detached from the others; or that it was contained in a referee's report, instead of being established by original and independent evidence. Such objections are, therefore, waived.

This testimony of the defendant's declarations cannot be said to have been wholly incompetent and immaterial; for it contains evidence by the admission of the defendant of his official position and connection with the bank—of its capital, its circulating notes, its securities, its indebtedness, its assets—at the time of the suspension of the bank, and of its collectable and uncollectable paper, all of which was pertinent to some of the issues in the case.

The objection to this testimony was, therefore, properly overruled, and the manner in which it was admitted by the referee, " subject to any objection that might be thereafter raised to the same," while it would not probably debar the defendant from availing himself of any direct substantial and unanswerable objection to the testimony, without

further specification, was at the same time a pertinent admonition, as well as a liberal suggestion to the defendant, that if he desired to make any technical or specific objection to the testimony afterwards, he might and must do so. None such was made.

The case does not show whether upon such decision the evidence was directly introduced. I infer not, for it did not immediately follow, and the case goes on to state, " the plaintiff then offered in evidence a certified copy of the proceedings, upon the re-establishment of the bank." As before shown, the evidence of the defendant was contained in these proceedings, and it is fair to infer that one of the objects in offering them was for the purpose of introducing these declarations of the defendant. If so, and if this was one set of papers, forming a single record or proceeding, (and I think it was treated as such,) the evidence was admissible, notwithstanding it embraced other papers inadmissible by themselves as independent evidence, but not objectionable as forming inseparable portions of a single document or connected series of papers on file, which could not be dissected or mutilated; which other papers it is perfectly obvious were never intended to be used as primary evidence in themselves of the facts recited in them.

These proceedings may have been offered for another purpose, to wit: for the purpose of showing the insolvency of the bank, judicially declared, and the appointment of a receiver within less than a month after the representations of its soundness and solvency were made by the defendant to the plaintiff. These judicial proceedings were averred in the complaint, and were, therefore, proper to be proved. The proceedings upon the re-establishment of the bank themselves contained evidence—admissible evidence—of these proceedings, recognized the insolvency of the bank, the granting of an injunction and the appointment of a receiver, contained a certificate of the defendant of these facts, and also his testimony before referred to. They

were moreover connected with and a part of. the proceedings taken to establish the insolvency of the bank, the granting of an injunction and the appointment of a receiver. They seem to me, therefore, to have been admissible, and to have been intended for one of the legitimate purposes before named. If designed simply to prove the re-establishment of the bank, they would be so wholly immaterial, indeed, so directly beneficial to the defendants, that I think we would be at liberty to overrule the objection on the ground that they could not by possibility prejudice his interests.

The referee saved to the party the right of subsequent specific objections, which not being made, we are at liberty to conclude the evidence was offered and received only for some of the lawful objects before mentioned; and I am not inclined to give effect to an objection technical in its character and failing to present itself in a clear and obvious aspect to the referee, himself a competent lawyer, for the purpose of overthrowing a decision which we can see was not unwarranted by the testimony in the case.

These remarks embrace, I think, all that is material to be specially considered in the points or argument of the counsel for the appellant. The objections to other portions of these proceedings, that the statements in the petition were mere hearsay; that the referee's unsworn statement was in effect received in evidence; that his estimates were allowed to have weight in the final disposition of the cause; that evidence was received of subsequent losses and compromises; that there was no authority in law for the introduction of a certified copy of proceedings of that character—with other minor objections suggested in the points or on the argument are all disposed of, I think, by the remarks already made, and are susceptible of one of two conclusive answers:

1. As to many of them the objections were not taken at the hearing.

2. As to all of them the papers were not admitted or used for any such purpose, as is assumed in the objections.

I think, on the whole, that the merits of the case were fairly tried; that no well founded objections to the evidence appear in the case or were fairly presented to the mind of the. referee; and that the judgment of the court below ought to be *affimed*.

DENIO, Ch. J. concurred with HOGEBOOM, J.    Judgment reversed.