The demurrers interposed to the plaintiff's complaint were upon the ground that the facts stated therein were not sufficient to constitute a cause of action.
The allegations of the complaint are somewhat voluminous, but so far as they are necessary to present the question to be determined upon this review they may be summarized and stated in substance, as follows:
The plaintiff was a stockholder of the New York Northern Railroad Company, which owned and operated a railroad from its junction with the Manhattan railway, near 155th street, in the city of New York, to a point on the New York Harlem railroad, at or near Brewster, in Putnam county. The company had about sixty miles of railroad, with terminal facilities and other property, in the city of New York and elsewhere, of great value, which competed with the New York Central Hudson River railroad, or roads which it controlled. Under these circumstances the defendants wrongfully, unlawfully, fraudulently and maliciously entered into a combination and conspiracy to procure for the New York Central Hudson River Railroad Company the possession, control and virtual ownership of the property and franchises of the New York Northern Company. Among the overt acts alleged to have taken place, in order to accomplish this result, are the following:
A majority of the stock of the New York Northern Company was purchased by the defendants, and officers friendly to them were elected. These officers, after obtaining the possession of the company, obstructed and hampered its business by refusing traffic offered to it by other transportation *Page 122 
companies and shippers, thus depriving it of the income which it might have received, and diverted its earnings so as to leave it without sufficient funds with which to pay the interest accruing and accrued upon its bonded indebtedness; that thereupon the defendants purchased or secured the control, by contract, of a majority of the outstanding bonds, and then procured the trustee to institute an action for the foreclosure of the mortgage given to secure the payment of the bonds. This action resulted in a sale of the property of the company to the New York Putnam Railroad Company, who leased the same to the New York Central 
Hudson River Railroad Company for a period of nine hundred and ninety-nine years, who thereupon mortgaged its property to secure the payment of bonds amounting to one hundred millions of dollars, which have passed into the hands of bona fide
purchasers, thus rendering the plaintiff's stock of no value. He demanded judgment for the value of his stock before it was injured by the action of the conspirators.
The action is at law for the purpose of recovering the damages which the plaintiff has sustained, and is not brought for or on behalf of the corporation or of its stockholders. The question raised for review is as to whether the damages resulting from the conspiracy belong to the corporation or to the individual stockholder. In determining this question we must bear in mind that the rights of creditors are superior to those of the stockholders, who are only permitted to share in the earnings of the corporation or in the division of its assets after the claims of creditors have been satisfied.
We are thus brought to a consideration of the nature of the injury inflicted by the conspirators. Many of the overt acts alleged are lawful and justifiable when done in good faith and without any intent or purpose to harm others, as, for instance, it was lawful for defendant Morgan and his associates to purchase stock and bonds of the New York Northern Company and to hold the same for investment or for profit. Upon the failure of the company to pay the interest accrued upon the bonded indebtedness, they had the right to petition *Page 123 
the trustee to foreclose the mortgage; but they had no right to enter into a conspiracy with the officers of the corporation, elected by them after they had acquired a majority of the stock, to refuse to accept traffic from other railroad and transportation companies, from which the corporation could have derived an income sufficient to pay the interest accruing upon the bonded indebtedness, or to otherwise divert the earnings of the company so as to bring it in default and permit the bringing of the foreclosure action for the purpose of cutting off the interest of the minority stockholders, or of the general creditors. The refusing of traffic and the diversion of funds operated to deplete the company's treasury and was a direct wrong to the corporation. It was an injury for which an action could have been maintained by the corporation, its receiver, if one had been appointed, or by any stockholder, after proper demand, in behalf of the company and for its benefit. In such an action the creditors are vitally interested. They have the right to have the action prosecuted on behalf of the company, so that their interests may be protected and their claims paid out of any recovery which may be obtained.
True, the plaintiff has suffered a depreciation in the value of his stock as a result of the wrong, and in this respect the injury was personal to the holders of the stock. But every stockholder has suffered from the same wrong, and if the plaintiff can maintain an action for the recovery of the damages sustained by him, every stockholder must be accorded the same right. The injury, however, resulting from the wrong was, as we have seen, to the corporation. The depreciation in the value of the plaintiff's stock, and that of the other stockholders, was in consequence of the waste and destruction of the property and franchise of the corporation. There are wrongs which if committed against a stockholder entitle him to a right of action against the person committing the wrong for the damages sustained, as, for instance, where a person had been induced to purchase stock in a corporation and pay a higher price than the stock was fairly and reasonably worth, or where the owner of stock had *Page 124 
been induced to part with it for a less sum than its true value, by reason of false and fraudulent representations of others with reference to its value. (Rothmiller v. Stein, 143 N.Y. 581;Ritchie v. McMullen, 79 Fed. Repr. 522.) But these wrongs are distinguishable from those against the corporation. They result in injury to the stockholder upon whom the wrong is practiced, but do not injure the other stockholders or the corporation itself. The injuries, however, in this case are not of that character. The defendants had obtained control of the affairs of the corporation through the board of directors elected by them. These directors undertook to manage the property of the corporation in good faith, according to their best judgment and skill in the interests of all of the stockholders. Having assumed the management, they were bound to use their best endeavors to prevent default in the payment of interest and the consequent sacrifice of the corporate property. Under the allegations of the complaint the directors of this corporation not only failed to discharge their duties to the stockholders, but they actively participated in the depletion of the company's treasury and in a sacrifice of the company's property, thus depriving the stockholders and the creditors of that which belonged to them.
It is suggested that the corporation is in the hands of a board of directors controlled by the defendants, and that they would work against the interest of the minority stockholders. It is also urged that the remedy of the stockholders, through the corporation, is inadequate, and that if a recovery should be had the proceeds might not reach the plaintiff, thus leaving him with a barren victory. It is doubtless true that the interests of the directors are inimical to those of the plaintiff and other minority stockholders, but the Supreme Court has ample power to protect the minority stockholders, even against the unlawful acts of the company's board of directors. It may appoint a receiver, if it has not already done so, and he may bring the action, or the plaintiff himself, where the officers of the corporation are under the control of the parties to be sued, may bring the action in his own name, but in the right *Page 125 
of the corporation, making it a party defendant. (Flynn v.Brooklyn City R.R. Co., 158 N.Y. 493-508.) As to the suggested inadequacy of the remedy, we apprehend there is no trouble. If the defendants conspired with the officers of the company to improperly deplete its treasury and thus render the corporation insolvent, in order that a sale might be made upon a foreclosure judgment, and the stockholders and creditors thus deprived of their interest in the property, we see no reason why the damages recoverable may not be for the full value of the property and franchises of the corporation as it existed prior to the overt acts complained of producing insolvency, less that which the property actually brought upon the foreclosure sale. This would afford full protection to all concerned. It would indemnify the creditors, and if the stock of the company was actually worth thirty-five dollars, or any other sum, per share, it would restore to the stockholders the property of which they have been deprived, or compensation therefor.
While the case of Flynn v. Brooklyn City R.R. Co. (supra) differs widely in its facts from the case under consideration, the principle involved is quite similar. In that case VANN, J., in delivering the opinion of the court, says, with reference to the subject we have under review, that "While courts cannot compel directors or stockholders, proceeding by the vote of a majority, to act wisely, they can compel them to act honestly, or undo their work if they act otherwise. Where a majority of the directors, or stockholders, or both, acting in bad faith, carry into effect a scheme which, even if lawful upon its face, is intended to circumvent the minority stockholders and defraud them out of their legal rights, the courts may interfere and remedy the wrong. Action on the part of directors or stockholders, pursuant to a fraudulent scheme designed to injure the other stockholders, will sustain an action by the corporation, or, if it refuses to act, by a stockholder in its stead for the benefitof all the injured stockholders."
In the case of Farmers' Loan Trust Co. v. New York *Page 126 Northern Ry. Co. (150 N.Y. 410) we reversed the judgment of foreclosure referred to in the complaint in this action. In the trial of the foreclosure action in that case the trial court excluded the evidence offered to the effect that the officers of the company had declined to accept traffic from other roads, and had diverted its money. It was because of the exclusion of this evidence that the judgment was reversed, thus in effect holding that had the facts appeared as claimed in the offer they would have established a good defense in equity to the action. It now appears that a sale of the company's property, under the foreclosure judgment, had taken place before the reversal of the judgment. But it would seem to logically follow that if the matter excluded constituted a defense which the corporation could avail itself of, the damages resulting would also belong to the corporation. (See, also, Leslie v. Lorillard, 110 N.Y. 519
-535; Gamble v. Queens County Water Co., 123 N.Y. 91;Sage v. Culver, 147 N.Y. 245; Hawes v. Oakland,104 U.S. 450.)
We think that the damages belong to the corporation and not to the individual stockholder, and that the judgment should be affirmed, with costs.
PARKER, Ch. J., O'BRIEN, BARTLETT, MARTIN and VANN, JJ., concur; GRAY, J., not sitting.
Judgment affirmed.