C. LUDWIG BAUMAN & CO. v. MAR-
CELLE, Commissioner of Internal
Revenue, et al.

Civ. A. No. 9321.

United States District Court
E. D. New York.

May 27, 1952.

Greenbaum, Wolff & Ernst, New York City, for the plaintiff, by Edward S. Greenbaum, Theodore S. Jaffin, and Maurice Greenbaum, New York City, of counsel.

Frank J. Parker, U. S. Atty. for Eastern District of New York, Brooklyn, N. Y., by Frederick G. Rita, Asst. U. S. Atty., Washington, D. C., and Nathan Borock, Asst. U. S. Atty., Brooklyn, N. Y.

RAYFIEL, District Judge.

This is an action under Title 28 U.S.C. §§ 1331, 1340 and 1346, for the recovery of internal revenue taxes wrongfully, erroneously and illegally assessed and collected. The facts, which were stipulated, are as follows:

On November 12, 1929, the plaintiff, a New York corporation leased from Raystarr Holding Corporation, also a New York corporation, hereinafter referred to as Raystarr, the warehouse premises known as No. 49 Junius Street, Brooklyn, New York, for a term ending April 30, 1950, at a rental of $53,000 per annum in addition to real estate taxes which the plaintiff assumed and agreed to pay. By agreements dated March 1, 1933, and May 12, 1933, the terms of the said lease were modified by reducing the rent therein reserved to $33,000 per annum for the period between March 1, 1933, and February 28, 1935, and the real estate taxes were to be paid by Raystarr. When said modification agreements were executed the president of the plaintiff was also the president of Raystarr and the three directors who comprised plaintiff's board of directors were three of the five members who constituted Raystarr's board of directors, and the said three individuals cast their votes authorizing and confirming the aforementioned modification agreements.

On August 20, 1936, a further modification agreement was entered into which confirmed an oral agreement extending the date of the aforementioned modification until September 1, 1936, and which further reduced the rent to $25,000 per annum for the period commencing September 1, 1936, and ending March 1, 1939, and also provided that Raystarr was to continue to pay the real estate taxes. At the time of the said modification agreement plaintiff's board of directors consisted of two individuals, both of whom had been members of its board when the modification agreements first hereinabove mentioned were entered into, and Raystarr's board of directors consisted of the same five individuals who on that occasion had been members of its board, and the same three directors cast their votes authorizing said modification.

On May 7, 1937, the lease was further modified by providing that the period for the reduced annual rental of $25,000 be extended to April 30, 1950, the date of the termination of the lease. At the time of this modification the directors of both corporations were the same as those who served in that capacity at the time of the modification effected on August 20, 1936.

At the time of the execution of the original lease on November 12, 1929, there had been issued and were then outstanding 3990 shares of the common stock of Raystarr, for which it had received $10 per share, and coupon bonds in the total face amount of $165,000, maturing on September 15, 1942, bearing interest at 7% per annum, payable semi-annually on the 15th days of March and September, which said principal amount had been reduced by 1942 to $129,600. Raystarr defaulted in the payment of interest on the said bonds which was due on March 15, 1933, and made no interest payments thereafter. Likewise, it had defaulted in the payment of the principal due September 15, 1942. No dividends have ever been paid to Raystarr's stockholders.

Raystarr's stockholders and bondholders learned of the modification agreements for the first time at their meeting held on or about December 3, 1940, at which time a protective committee of Raystarr bondholders was appointed. It consisted of three individuals, none of whom was a stock-

holder, officer or director of the plaintiff. This committee asserted the following claims against the plaintiff:—

(1) That at the time of the execution of the several modification agreements all the directors of Raystarr who approved the same were directors of the plaintiff and completely dominated by it.

(2) That the modification agreements could not have been adopted by Raystarr without the concurrence of the said directors, all of which was improper, illegal and not in the interests of Raystarr, but rather for the benefit of the plaintiff.

(3) That the plaintiff induced such wrongful action and that by reason thereof Raystarr's security holders had been injured and the plaintiff was liable to Raystarr's security holders for the damages resulting therefrom.

Thereafter negotiations were held between the plaintiff and the bondholders committee of Raystarr and in December, 1942, an agreement was entered into between the plaintiff and the bondholders committee of Raystarr under the terms of which the plaintiff agreed to pay to the said bondholders the sum of $132,960 in full accord and satisfaction of their claims, payable $12,960 forthwith and the balance of $120,000 in 24 equal quarter-annual installments of $5,000 each, all said sums to be paid ratably according to the holdings of the bondholders, who, in consideration of such payments, agreed to release the plaintiff from any and all liability arising from the alleged wrongful acts. The agreement provided further that upon the payment by the plaintiff of the said sum of $132,960 it would have the option to purchase the bonds and the Raystarr stock owned by the bondholders for the sum of $75,000, likewise payable ratably in quarter-annual installments of $5,000 each. The terms of this settlement were embodied in a letter, dated December 31, 1942, to Raystarr's bondholders, and were accepted.

The plaintiff maintains its books on an accrual basis and for the calendar year 1942 it listed as accrued its obligation to pay $132,960 to the Raystarr bondholders.

The plaintiff in its income tax return for the year 1942, filed on March 15, 1943, deducted from its gross income the obligation to the Raystarr bondholders. Due to an erorr $129,600 was deducted instead of $132,960. The Commissioner of Internal Revenue assessed a deficiency in the sum of $53,967.19 with interest, holding that it was not an allowable deduction under section 23 of the Internal Revenue Code, 26 U.S.C. § 23. The plaintiff paid the assessment and on April 1, 1946, filed a claim for the refund of the said sum and, more than six months having elapsed since the filing thereof, instituted this action.

The plaintiff contends that the deduction of $132,960 paid to Raystarr's bondholders was an ordinary and necessary expense in the operation of its business and as such is deductible under Section 23(a) (1) of the Internal Revenue Code, 26 U.S. C. 23. The government disputes plaintiff's right to such deduction.

Concededly the plaintiff's three directors constituted a majority and controlled the operations of Raystarr's board of directors when the latter entered into the aforementioned modification agreements with the plaintiff.

The decision in this case appears to rest on the answers to the following questions:—

(1) Was the cause of action for damages for misconduct that of Raystarr or, rather, its bondholders?

(2) Was the obligation to pay damages for such misconduct that of the plaintiff or, rather, its directors?

My answer to the first question is that the cause of action was that of Raystarr. That position appears to be supported by the weight of authority. Judge Haight, of the New York Court of Appeals, in the case of Niles v. New York Central and H. R. R. Co. 176 N.Y. 119, at page 123, 68 N.E. 142, at page 144, stated as follows:— "* * * There are wrongs which, if committed against a stockholder, entitle him to a right of action against the person committing the wrong for the damages sustained, as, for instance, where a person had been induced to purchase stock in a

corporation, and pay a higher price than the stock was fairly and reasonably worth, or where the owner of stock had been induced to part with it for a less sum than its true value by reason of false and fraudulent representations of others with reference to its value. Rothmiller v. Stein, 143 N.Y. 581, 38 N.E. 718, 26 L.R.A. 148; Ritchie v. McMullen, 6 Cir., 79 F. 522. But these wrongs are distinguishable from those against the corporation. They result in injury to the stockholder upon whom the wrong is practiced, but do not injure the other stockholders or the corporation itself. The injuries, however, in this case, are not of that character. The defendants had obtained control of the affairs of the corporation through the board of directors elected by them. These directors undertook to manage the property of the corporation in good faith, according to their best judgment and skill, in the interests of all of the stockholders. Having assumed the management, they were bound to use their best endeavors to prevent default in the payment of interest, and the consequent sacrifice of the corporate property. Under the allegations of the complaint, the directors of this corporation not only failed to discharge their duties to the stockholders, but they actively participated in the depletion of the company's treasury and in a sacrifice of the company's property, thus depriving the stockholders and the creditors of that which belonged to them. * * *" And then 176 N.Y. at page 126, 68 N.E. at page 145: "We think that the damages belong to the corporation, and not to the individual stockholder, and that the judgment should be affirmed, with costs."

See also Kavanaugh v. Commonwealth Trust Co., 181 N.Y. 121, at page 123, 73 N.E. 562, at page 563, in which Chief Judge Cullen said, "The loss of the corporate funds, resulting from the misconduct of the individual defendants, primarily gave a cause of action to the corporation, not to its stockholders, and no stockholder could maintain an action for the loss he had individually suffered in the deprecia-

tion of the value of the share stock held by him. Niles v. N. Y. Central & H. R. R. Co., 176 N.Y. 119, 68 N.E. 142. As said by Judge Vann in Flynn v. Brooklyn City R. Co., 158 N.Y. 493, 53 N.E. 520: 'The right of action, however, belongs to the corporation, and should be brought by it as plaintiff; but, when it will not bring the suit itself, an aggrieved stockholder, after due demand and refusal or unreasonable neglect to proceed, may bring it in his own name upon making the corporation a party defendant.' "

In view of the foregoing I am of the opinion that the plaintiff's liability, which was secondary to that of its directors, was to the Raystarr corporation and not to its bondholders, and that the proceeds of a judgment recovered under a claim arising from the misconduct of its directors would be the property of the corporation.

■ The answer to the second question is that the obligation to pay for the acts of misconduct was that of the directors who committed them.

Section 60, subd. 2, of the General Corporation Law of the State of New York, McK.Consol.Laws, c. 23, provides that an action may be brought against the *directors* of a corporation "to compel them to pay to the corporation, or to its creditors, any money and the value of any property, which they have acquired to themselves, or transferred to others, or lost, or wasted, by or through any neglect of or failure to perform or other violation of their duties."

I believe, therefore, that the amount paid in settlement of the claim was not such an ordinary or necessary expense of the plaintiff's business as could be deducted for income tax purposes. Blackwell Oil & Gas Co. v. Commissioner of Internal Revenue, 60 F.2d 257; Deputy v. Dupont, 308 U.S. 488, 60 S.Ct. 363, 84 L.Ed. 416.

Accordingly, judgment is rendered in favor of the defendant dismissing the complaint herein.

Submit findings of fact and conclusions of law and decree in conformity herewith.