Emily J. MULLINS, Plaintiff,

v.

The FIRST NATIONAL EXCHANGE BANK OF VIRGINIA et al., Defendants.

J. D. MULLINS, Jr., Plaintiff,

v.

The FIRST NATIONAL EXCHANGE BANK OF VIRGINIA et al., Defendants.

TRI-STATE AUTOMOTIVE WAREHOUSE, INCORPORATED, Plaintiff,

v.

The FIRST NATIONAL EXCHANGE BANK OF VIRGINIA et al., Defendants.

Nos. 65–C–55–A to 65–C–57–A.

United States District Court
W. D. Virginia,
Abingdon Division.

Oct. 21, 1967.

714

H. Clyde Pearson, Hopkins, Pearson & Engleby, Roanoke, Va., for plaintiffs.

Wilbur L. Hazlegrove, Hazlegrove, Carr, Dickinson, Smith & Rea, Roanoke, Va., for defendant First Nat. Exch. Bank of Va.

Robert S. Irons, Asst. U. S. Atty., Roanoke, Va., for defendants Eugene P. Foley, Clarence P. Moore and Edgar Allen.

Erwin S. Solomon, Hot Springs, Va., for Lawrence Warehouses, Inc.

## OPINION

MICHIE, District Judge.

Plaintiffs, as individuals, and as alleged assignees of a cause of action of Tri-States Automotive Warehouse, Inc. seek damages from the defendants jointly and severally for the wrongful administration of a loan agreement, in which Lawrence Warehouses, Inc. participated, between the corporation, the Small Business Administration and The First National Exchange Bank.

The present issues have arisen upon motions to dismiss filed severally by the defendants. It is asserted by all the defendants that this court lacks jurisdiction to hear the cases since they do not present a question arising under the Constitution, laws, or treaties, of the United States and, further, since an interest in the cause of action still remains in Tri-States necessitating its joinder as a necessary party plaintiff, there cannot be complete diversity. It is also asserted that plaintiffs as mere stockholders have no standing to sue for harm to the corporation, and that plaintiffs as individuals have no claim for the wrongful administration of the loan, for, if there has been any harm suffered, it has been sole-

ly a corporate harm. Plaintiffs claim that they have a right of action personally and further that any cause of action belonging to the corporation was assigned to them as individuals. Defendants disagree, asserting that the attempted assignment was invalid under Virginia law, and further that Tri-States to whom the cause of action still belongs may not assert it as the corporation no longer exists for the purpose of prosecuting suits. Additionally, the Small Business Administration argues that only under the Federal Tort Claims Act may this action be maintained against it and that its officers and employees are immune from suit. Both the First National Exchange Bank and Lawrence Warehouses assert that the cause of action does not survive and therefore is not assignable. First National Exchange Bank argues that if the Mullins are assignees they received the cause of action jointly and, therefore, it must be prosecuted by them jointly. Lawrence Warehouses and the First National Exchange Bank also claim that the statute of limitations has run, barring the claim. Lawrence Warehouses raises the additional individual defense that it is in no way liable as it was subject to the complete discretion and control of the other defendants.

The complexity of the questions presented necessitates a detailed recitation of the facts. Each of the three plaintiffs instituted a separate action against all of the defendants on August 11, 1965. The three cases have been consolidated for decision as the questions of law involved are largely the same in all three.

Plaintiffs J. D. Mullins and Emily Mullins were the principal stockholders of Tri-States Automotive Warehouse, Inc. and were respectively its President and Secretary-Treasurer. Tri-States, which operated a wholesale automotive parts business, in January of 1962 negotiated a loan in the amount of $100,000 with the Small Business Administration in which the First National Exchange Bank participated, the SBA advancing $60,000 and the Bank $49,000. The loan was evidenced by a note in the amount of $100,000 payable in monthly installments of $1,117.00 with interest at 6% per annum and was executed by Tri-States. Plaintiffs J. D. and Emily Mullins executed a separate guaranty in which they bound themselves to take up the note in the event of a default. Mr. Mullins was required to assign as security life insurance policies upon his life of which his wife was the beneficiary and both assigned unidentified personal property all as security for the loan.

The principal security transaction and the one out of which this present controversy eventually arose was a bonded warehouse plan set up under the auspices of Lawrence Warehouses, Inc. Although the unpaid balance on the indebtedness had by August 14, 1962 been reduced to $93,328.00 Lawrence, upon the directions of the Bank and the SBA froze the Tri-States inventory. Plaintiffs claim that this act was arbitrary and without any justification, and that it was the primary cause of Tri-States' voluntary bankruptcy which followed on September 10, 1962.

This alleged tortious interference with Tri-States' property and contractual rights combined with the defendants' failure to undertake an orderly liquidation of assets is asserted by the plaintiffs to have resulted in a total of $275,000 actual damages in addition to which they request $275,000 exemplary damages.

The corporate plaintiff emerged from bankruptcy proceedings on April 22, 1963, discharged of its obligations. As the assets were not sufficient to meet the claims of its creditors, and as the other security did not cover the balance of the $93,328.00 indebtedness, the SBA instituted an action against the Mullins individually on their guarantee. In this action, styled United States v. Mullins, the Mullins counter-claimed on substantially the same bases as the present complaints. I dismissed the counterclaim, and although that suit is still pending, having been reversed and remanded on other grounds, defendants assert a degree of *res judicata*.

While this first suit was pending and several months after Tri-States' discharge in bankruptcy, on September 5, 1963, the Referee executed a release of all interest he might retain in the corporation's possible right of action against the defendants, so that now the plaintiffs claim to sue both in their own right and as assignees of Tri-States' cause of action. Defendants, as noted, contest the validity and the effect of the September 5 transaction.

The first question presented is whether this court has subject matter jurisdiction. All three of the complaints have alleged jurisdiction pursuant to 28 U.S.C. § 1331(a) which vests in the district court original jurisdiction of a civil action where "the matter in controversy * * * arises under the Constitution, laws, or treaties of the United States." This averment of federal question jurisdiction is premised solely upon the assertion that the acts of the defendants causing the alleged harm to the plaintiffs amounted to a "wrongful administration of the agreement by the defendants, contrary to the spirit and purpose of the Small Business Act, as passed by Congress." The question is whether the statute creating the Small Business Administration, 15 U.S.C. § 631 et seq., occupies a position sufficiently significant to the prosecution of these actions as to permit federal question jurisdiction.

The landmark case collecting prior decisions and yielding a definition of what is meant by "aris[ing] under the Constitution, laws, or treaties of the United States" is Gully v. First National Bank, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1936). There, Justice Cardozo writing for the court, stated at p. 112, 57 S.Ct. at p. 97:

> How and when a case arises "under the Constitution or laws of the United States" has been much considered in the books. 'Some texts are well established. To: bring a case within the statute, a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's

cause of action. Starin v. [State of] New York, 115 U.S. 248, 257, 6 S.Ct. 28, 29 L.Ed. 388; First National Bank [of Canton, Pa.] v. Williams, 252 U.S. 504, 512, 40 S.Ct. 372, 374, 64 L.Ed. 690. The right or immunity must be such that it will be supported if the Constitution or laws of the United States are given one construction or effect, and defeated if they receive another. Id.; King County v. Seattle School District, 263 U.S. 361, 363, 364, 44 S.Ct. 127, 128, 68 L.Ed. 339.

And at p. 114, 57 S.Ct. at p. 98, Justice Cardozo continues:

> "A suit to enforce a right which takes its origin in the laws of the United States is not necessarily, or for that reason alone, one arising under those laws, for a suit does not so arise unless it really and substantially involves a dispute or controversy respecting the validity, construction, or effect of such a law, upon the determination of which the result depends." Shulthis v. McDougal, 225 U.S. 561, 569, 32 S.Ct. 704, 56 L.Ed. 1205.

In Barnhart v. Western Maryland Rwy. Co., 128 F.2d 709 (4th Cir. 1942), a case which affords substantial analogy to the present controversy. Judge Dobie speaking for the court applied the reasoning in *Gully*. He said at p. 713:

> This brings us to the pivotal point of appellants' case which was succinctly stated by the court below: " * * * Clearly it cannot be said that the instant case 'involves a dispute or controversy respecting the validity, construction or effect' of that statute [Transportation Act of 1920], upon the determination of which the result depends. The present complaint does not call upon the court to now determine either the validity, construction or effect of any provision of the Act creating the Railroad Labor Board. Such questions have been heretofore determined by the Supreme Court, and it is not my understanding from the argument of counsel for the plaintiffs that there is any effort in this case to distinguish or avoid the effect of those

decisions. What is here involved is merely a controversy between the parties over an alleged wrongful discharge of the plaintiffs from employment existing after the passage of an Act of Congress, and possibly affected as to some of its working conditions by the published decisions of the Labor Board; but the right of action asserted does not arise from any provision of the statute, and the determination of the controversy does not depend upon any disputed validity, construction or effect of the statute. In other words, the employment may have been inspired by the Act, but a right of action for the defendant's alleged breach of the contract does not arise from the Act; but only from the subsequent contractual relations of the parties. The wrongful breach of such relations does not confer federal court jurisdiction unless there is diverse citizenship."

■■ Although an application of the above principles concerning the availability of federal question jurisdiction applies equally whether the case sounds in tort or in contract, a resolution of this issue is, I think, presently desirable. In my previous opinion dismissing the Mullins' counterclaim in United States v. Mullins, 228 F.Supp. 748 (W.D.Va.1964). I commented that it was extremely difficult to determine whether the counterclaim sounded in tort or in contract. At that time, however, I did not feel compelled to make a determination since under either theory the counterclaim could not have been maintained. Now, after a thorough review of the pleadings, motions and briefs submitted by the parties, I conclude that despite plaintiffs' obscurities, recovery must rest upon tort rather than contract principles. Each of the three complaints recites as the source of the harm wilful, reckless and concerted action by the defendants resulting in an interference with the business of and a conversion of the assets of Tri-States. This language sounds in tort, not in contract. Furthermore, the purported assignment upon which the Mullins base

their individual claims, drafted on the stationery of plaintiffs' counsel, speaks of the claim as "a tort claim". And finally, had the plaintiffs wished to challenge defendants' position that the action sounded in tort, I expect that they would have done so.

Plaintiffs assert that essential to the resolution of the entire controversy is a determination of the construction and effect of the Small Business Administration Act. I cannot agree. Merely a glance at the statute is sufficient to show that it is not determinative of the rights of the parties to this action. The plaintiffs' right to recover will turn not upon anything contained in the statute, but rather upon the tort law of the State of Virginia. It might be argued that but for the existence of the Small Business Administration, the present controversy would not have arisen, and also, that in the course of reaching a decision on the merits this court might well take cognizance of the policy upon which the Small Business Administration was founded. But all this does not change the fact that the laws of the State of Virginia will establish or defeat the plaintiffs' right to recover and that reference to the Small Business Administration Act will, in no substantial manner, affect the result.

■ Nor does the classification of the Small Business Administration of a "sue and be sued" agency without more suffice to establish federal question jurisdiction. To hold otherwise would be tantamount to a finding that any time a sue and be sued agency is listed as a party defendant the case would automatically be one arising under the laws of the United States. Such a result would be inconsistent with the holding in Gully v. First National Bank, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1936). *Gully* requires that the right created by the federal law must be an essential element of the plaintiffs' cause of action. Merely the naming of a federal agency as a defendant does not mean that the merits of the action must necessarily turn upon a federal law. Consonant with this reasoning, at least one court has held

explicitly that sue and be sued status does not confer federal question jurisdiction but merely waives sovereign immunity as a defense to a suit against the administration. Harms v. Federal Housing Administration, 256 F.Supp. 757 (D.Md. 1966).

My conclusion that federal question jurisdiction does not lie applies equally to each of the three plaintiffs. Remaining as possible bases upon which jurisdiction may be founded are diversity and as to the SBA a specifically conferred jurisdiction for cases arising under the Federal Tort Claims Act.

 I have concluded that the Federal Tort Claims Act reaches out to draw the type of action here presented within its own special type of jurisdiction. Also, it is quite clear to me that with respect to the Small Business Administration and its named officers, diversity jurisdiction is not proper. Diversity jurisdiction, however, would, under the proper circumstances, confer power upon this court to adjudicate matters with respect to the First National Exchange Bank, Lawrence Warehouses and the officials of the Small Business Administration were they sued in their individual capacities. But diversity as a basis of jurisdiction is not available to the corporate plaintiff, Tri-States Automotive Warehouse, since it and one of the defendants, First National Exchange Bank, are both citizens of Virginia. Regardless of the citizenship of the other defendants, this fact alone destroys complete diversity. Strawbridge v. Curtiss, 3 Cranch (7 U.S.) 267, 2 L.Ed. 435 (1806). The suits by the Mullins individually do, it should be noted, evidence the requisite diversity of citizenship allowing, as to these cases, the court to take cognizance of the subject matter. The significance of the failure of subject matter jurisdiction as to Tri-States and the availability of it as to the individual Mullins suits will be explored later, but for the present I turn now to a consideration of the impact of the Federal Tort Claims Act upon the power of each of the plaintiffs to maintain this cause of action against the SBA.[1]

The ensuing evaluation of these suits in light of the Federal Tort Claims Act, of course, applies only to the defendant the Small Business Administration and its named officials; defendants First National Exchange Bank and Lawrence Warehouses are unaffected.

Foley, Moore and Allen are certainly employees of the federal government. The Small Business Administration is certainly an agency of the United States. By the definitions in 28 U.S.C. § 2671 there can be no doubt that a tort claim against them is within the cognizance of the Tort Claims Act. Furthermore, 28 U.S.C. § 1346(b) with an all encompassing sweep gathers within the folds of the Federal Tort Claims Act an unrestricted variety of actions sounding in tort. That section reads:

Subject to the provisions of chapter 171 of this title [28 U.S.C. § 2671–2680], the district courts, * * * shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, * * * for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the

---

1. I have been, throughout this opinion, treating the allegations in each of the complaints as constituting suits against the defendants Foley, Moore and Allen in their official capacities as employees of the Small Business Administration and not as suits against them in their individual capacities. I have operated under this assumption since it is my conviction that the principles established in Holmes v. Eddy, 341 F.2d 477 (4th Cir. 1965), Gregoire v. Biddle, 177 F.2d 579 (2d Cir. 1949) and Jones v. Kennedy, 121 F.2d 40 (D.C.Cir.1941) that public officials when acting within the scope of their official authority are immune from suit for damages successfully preclude actions against the three named individual defendants in their individual capacities.

claimant in accordance with the law of the place where the act or omission occurred.

■■■■■■ The significant question is not whether this tort is within the compass of the Federal Tort Claims Act but rather whether the Federal Tort Claims Act constitutes the exclusive medium under which this action must be maintained. The Government argues that it is. Plaintiffs' vigorous opposition stems from the disadvantages to them involved in a proceeding under the Act and the well-founded fear that the terms of the Act may preclude entirely an action upon the type of complaints which they allege. The SBA, admittedly, is a sue and be sued agency. Plaintiffs argue that this fact allows a suit to be maintained against the agency itself outside the purview of the Tort Claims Act. Of course, in accord with my prior feelings, while the sue and be sued status constitutes a waiver of immunity, it is not in and of itself, absent the existence of a controversy arising under the laws of the United States, a bestowal of federal question jurisdiction. Keifer and Keifer v. Reconstruction Finance Corp., 306 U.S. 381, 59 S.Ct. 516, 83 L.Ed. 784 (1939) allowed that under the laws then in effect a suit could be maintained against a sue and be sued agency for an action sounding in tort. The Federal Tort Claims Act, passed in 1946, completely transformed the right which had previously existed. The effect of the Tort Claims Act was to restrict the waiver of sovereign immunity as to tort actions against the United States to those cognizable under the Act.

> The authority of any federal agency to sue and be sued in its own name shall not be construed to authorize suits against such federal agency on claims which are cognizable under section 1346(b) of this title, and the remedies provided by this title in such cases shall be exclusive.

28 U.S.C. § 2679(a).

The purpose of 28 U.S.C. § 2679(a) is explained by reference to legislative history:

> This section provides that after the effective date of the title, the authority of any federal agency to sue and be sued in its own name will no longer be applicable to torts cognizable under this title. This will place torts of "suable" agencies of the United States upon precisely the same footing as torts of "nonsuable" agencies. In both cases, the suits would be against the United States, subject to the limitations and safeguards of the bill; and in both cases the exceptions of the bill would apply either by way of preventing recovery at all or by way of leaving recovery to some other act, as, for example, the Suits in Admiralty Act. It is intended that neither corporate status nor "sue and be sued" clauses shall, alone, be the basis for suits for money recovery sounding in tort.[2]

Freeling v. Federal Deposit Insurance Corp., 221 F.Supp. 955 (W.D.Okla.1962), aff'd per curiam, 326 F.2d 971 (10th Cir. 1963) applied the legislative intent to hold, in a factual situation analogous to the present one, that in spite of the agency's sue and be sued status and even though recovery for the particular tort was precluded by 28 U.S.C. § 2680(h), the Tort Claims Act was the exclusive remedy. Accord: United States v. Delta Industries, 275 F.Supp. 934 (N.D.Ohio 1966).

■■■■ Plaintiffs have attempted to extricate themselves from the grasp of *Freeling* by reasoning that the F.D.I.C., unlike the SBA, was a sue and be sued agency in existence prior to the passage of the Tort Claims Act. The subsequent chartering of the SBA with sue and be sued status, they reason, must be taken as an intention on the part of Congress to exempt suits against the SBA from the strictures of the Tort Claims remedy. I am persuaded that the chronological juxtaposition cannot in this instance be accorded the weight of authority. I con-

---

2. S.Rep. No. 1400, 79th Cong., 2nd Sess., 33–34 (1946).

clude, therefore, that the reasoning and conclusion in *Freeling* is equally as applicable to the SBA as to the F.D.I.C.

 The holdings in *Freeling* and *Delta Industries* are particularly applicable to the present facts because I, like those courts, find that within the exclusive compass of the Federal Tort Claims Act the wrong which is urged may not be prosecuted against the United States. Excluded by 28 U.S.C. § 2680(h) is any claim against the United States based upon tortious interference of contract rights. In my prior opinion in the related case of United States v. Mullins, 228 F.Supp. 748 (W.D.Va.1964) I concluded that if the claim sounded in tort it was, in fact, a tortious interference with contract rights and was not cognizable under the Federal Claims Act because of § 2680(h). This finding was not challenged by the Mullins and has been asserted collaterally by the United States in the present suit. For reasons which I shall not go into here I have concluded that, in fairness, · collateral estoppel should not be applied. Nevertheless, I do adopt here my former position that even though plaintiffs' complaints speak in terms of a tortious conversion of property, the nature of the damages which they seek, an amount far in excess of the value of the property supposedly converted, causes their claims, especially as relates to the SBA, properly to be classed as a tortious invasion of contract rights.

 Even if plaintiffs' remedy under the Federal Tort Claims Act were not excluded by § 2680(h), it would be excluded by § 2680(a) which is the discretionary function exclusion. While it is impossible, even from the case law, to delineate the precise perimeter of the exclusion, the application of the principle is not without some guidelines. Perhaps

the most thorough and authoritative exposition is found in Dalehite v. United States, 346 U.S. 15, at p. 34, 73 S.Ct. 956, at p. 967, 97 L.Ed. 1427 (1952) where the court said:

> The "discretion" protected by the section is not that of the judge—a power to decide within the limits of positive rules of law subject to judicial review. It is the discretion of the executive or the administrator to act according ·to one's [best] judgment of the best course, a concept of substantial historical ancestry in American law.

The only actionable complicity of the SBA in the harm allegedly suffered by the plaintiffs would have been its agreement to freeze the assets of Tri-States held by Lawrence as security for the loan and its part in ascertaining a proper way to dispose of the frozen inventory toward the reduction of plaintiffs' indebtedness. To me, this can be nothing but a discretionary function which from the point of view of allowing the most effective conduct of the affairs of the SBA must be left to the administrator and his subordinates. Compare United States v. Delta Industries, supra. My conclusion that both exclusions are applicable necessitates the further ruling that there is no possible basis upon which plaintiffs may prosecute this cause of action against the United States or the SBA.[3]

Before proceeding further, the sake of clarity suggests a summation of how plaintiffs stand in light of the conclusions I have reached so far. Neither the Mullins individually nor Tri-States have a maintainable right of action against the United States, the SBA or its officials. That result is jurisdictional; that is to say, neither this court nor any court has the power to entertain the action. It is an incident of the sovereign immunity of the United States; a sov-

3. When a claim comes within the compass of the Tort Claims Act, the United States rather than the agency or its administrator must be named as the defendant. The failure to do so constitutes a jurisdictional defect. Also, a two year statute of limitations applies to claims cognizable under the Act. These two issues were not raised by counsel and, in view of my holding that under no circumstances could the agency or the United States be held to answer, it was deemed unnecessary to confront them.

ereign immunity relinquished as to certain types of actions, but not as to the action which plaintiffs here assert. It is therefore necessary that the SBA and its named officials be dismissed as parties defendant in each of the three suits.

Remaining in the suit by Tri-States Automotive Warehouse, then, are only the defendants First National Bank and Lawrence Warehouses. Federal question jurisdiction has been found inapplicable, and even if the claims had been entertainable under the Federal Tort Claims Act, this in itself would not have sufficed to give jurisdiction as to the other two defendants. See, e. g., Radford v. United States, 264 F.2d 709 (5th Cir. 1959); Benbow v. Wolf, 217 F.2d 203 (9th Cir. 1954); Wasserman v. Perugini, 173 F.2d 305 (2d Cir. 1949). Moreover, the citizenship of the plaintiff and one of the defendants being similar, there can be no diversity jurisdiction. The suit by the plaintiff Tri-States Automotive Warehouse, therefore, must be dismissed for failure of subject matter jurisdiction.

The suits by the Mullins individually against the First National Exchange Bank and Lawrence Warehouses remain. Diversity jurisdiction is the basis and the only basis upon which I may and now do properly entertain these two suits.

Reviewing briefly several facts mentioned earlier, the motions to dismiss filed by the First National Exchange Bank and Lawrence Warehouses do not rely solely upon the failure of jurisdiction but, in addition, assert a failure to state a claim upon which relief may be granted. The Bank and Lawrence reason that any cause of action arising out of the allegedly tortious conduct belongs to the corporation, Tri-States Automotive Warehouse, because the tort, if any, was practiced solely upon that entity. Plaintiffs, of course, consider that they have a right to recover for the harm which they, as stockholders and officers, suffered even though defendants acted only with respect to the corporation. Additionally, they claim to be the as-

signees of the corporation's right of action by virtue of a transfer from the bankruptcy referee effected during the twilight of the Tri-States bankruptcy proceedings. Defendants, again, challenge both the validity and effect of the transfer.

In resolving the issues of law thus presented, I have taken as true the essential facts in both plaintiffs' original and amended complaints. I have also deemed as part of the record the petition and order attached to plaintiffs' amended complaints.

I turn, first of all, to the personal harm allegedly suffered by each of the Mullins as a result of the tort practiced upon the corporation. The issue is squarely put: May the Mullins, as the officers and virtually the sole stockholders of Tri-States, maintain individual actions for personal harm resulting from a wrong suffered by the corporation.

Since the assets which were "frozen" were not assets of the Mullins individually, the conclusion may not be escaped that the wrong, if any, was suffered only by the corporation. The cases, treatises, and commentators are in unison. The rule is that an officer or a shareholder of a corporation, even if he is the sole shareholder, has no personal or individual right of action against third parties for a wrong or injury inflicted by those third parties upon the corporation. See, e. g., Bricteon v. Woodrough, 166 F.2d 107, 109 (8th Cir. 1947); Boatright v. Steinite Radio Corp., 46 F.2d 385 (C.C.A. 10th 1931); Green v. Victor Talking Machine Co., 24 F.2d 378 (C.C.A.2d 1928), cert. denied, 278 U.S. 602, 49 S.Ct. 9, 73 L.Ed. 530 (1928); Ludwig Bauman & Co. v. Marcelle, 105 F.Supp. 780 (N.D.N.Y.1952); Liken v. Shaffer, 64 F.Supp. 432 (N.D. Iowa 1946). See generally: 36 A.L.R. 2d 1351; 167 A.L.R. 279 and cases cited.

I am also familiar with a well known exception to this general rule which is that a stockholder may maintain an action in his own right for an injury directly affecting him, although the cor-

poration may also have a cause of action growing out of the same wrong. For this rule to apply, it must appear that the injury to the stockholder resulted from the violation of some *special duty* owed the stockholder by the wrongdoer which has its origin in circumstances independent of the plaintiff's status as a stockholder. Ritchie v. McMullen, 79 F. 522 (C.C.A. 6th Cir. 1897), cert. denied, 168 U.S. 710, 18 S.Ct. 945, 42 L.Ed. 1212 (1897). A review of the authority allowing this exception has convinced me that it is not applicable in the present case since there was no duty, in the sense that case law has defined the term, owed the Mullins individually by the defendants arising out of a source independent of their status as shareholders. The interference with the assets of Tri-States, if any, can be no more than an interference with the business or property of the corporation. *Any subsequent improper administration of these assets also was a direct wrong to the corporation.* Compare Cullum v. General Motors Acceptance Corp., 115 S.W.2d 1196 (Tex.Civ. App.1938). The fact that plaintiffs were guarantors on the note executed by the corporation will not suffice to create a personal right of action independent of the harm suffered by the corporation. Nilliken v. McGarrah, 159 App.Div. 725, 144 N.Y.S. 964 (1913).

In Terry v. Yancey, 344 F.2d 789 (4th Cir. 1965) the Court of Appeals of this circuit reaffirmed the proposition that a corporation is an entity separate from its officers and stockholders. In that case, the Court of Appeals refused to allow an individual plaintiff to include as an item of damages harm occurring to the corporate entity. It reasoned at p. 790:

> * * * where an individual creates a corporation as a means of carrying out his business purposes he may not ignore the existence of the corporation in order to avoid its disadvantages.
> * * *

Here, for the same reason, the separability of Tri-States from its stockholders may not be ignored. No good reason has been shown why the corporate identity must be disregarded. Thus:

> Individual action may only be maintained where "fraud, deceit or bad faith" have been practiced upon him as an individual. " * * * unless there is direct damage personal to plaintiff, he may not sue in his individual capacity". Plaintiff here does not bring herself within the above rule.

Henry v. General Motors Corporation, 236 F.Supp. 854, 857 (N.D.N.Y.1964), aff'd 329 F.2d 887 (2d Cir. 1964).

In determining whether plaintiffs are assignees of the corporation's cause of action by virtue of the September 5, 1963 transaction, I feel that the history of the tort claim is somewhat significant. I am assuming that it passed to the trustee in bankruptcy under § 70(a) (6), although this assumption is questionable in view of the apparent nature of the claim. See Anno.: 66 A.L.R.2d 1210. During the bankruptcy, the Mullins attempted to get the trustee to prosecute the tort claim against the present defendants. He refused and his refusal was upheld by the referee and by this court in turn. An excellent argument can be fendants. He refused and his refusal to prosecute the alleged tort action, that, in fact, sometime prior to September 3, 1963 he had abandoned it. However, I rest my present decision on the basis that under close scrutiny the September 5 transaction does not constitute an assignment of the tort claim to the Mullins individually, but rather it was intended to, and was sufficient only to, effect an abandonment of the tort claim to the corporation. In so holding, I reach the same result as would have been reached had an abandonment been thought to have occurred earlier.

The Mullins in asserting their claim as assignees rely upon the language in the order entered September 5, 1963 that:

> * * * all rights, title and interest of the Trustee in the corporate entity of Tri-States Automotive Warehouse, Inc. be and the same are hereby transferred to J. D. Mullins, Jr. and Emily

J. Mullins, together with such rights in the tort claim of the Tri-States Automotive Warehouse, Inc. against any one or more of the above-named parties.

If I were to conclude that this part of the order could stand alone and out of context, it would appear to support the Mullins' position. However, when read in conjunction with the preface of the order as well as the petition to the Referee in Bankruptcy in response to which the order was entered, both of which apparently were prepared by counsel for the Mullins, it becomes clear that the plaintiffs' desire was not to have the cause of action assigned to them individually, but rather it was their desire that the cause of action be disclaimed to the corporation so that a suit might be maintained on behalf of the corporation by the Mullins. The trustee, of course, had declined to maintain the action on behalf of the corporation and it was deemed necessary that his interest be transferred to the Mullins so that they could undertake to do what he had declined to do. Ownership of the tort claim would, of course, repose in Tri-States.

 In support of this conclusion is the fact that any direct transfer to the Mullins individually for a consideration would constitute a sale of the bankrupt's assets. Section 58(a) (4) of the Bankruptcy Act requires as a prerequisite for a sale of any property that ten days notice be given to all creditors, but that in the event good cause is shown less than ten days notice or no notice at all may be appropriate. It is clear from the petition and order that the former was submitted and the latter entered on the same day. From this, I deduce that if any notice was given, it was less than the required ten days. Since no good cause has been shown why notice was unnecessary, the failure of notice will serve to vitiate any sale. Butler v. Ellis, 45 F.2d 951, 956 (C.C.A. 4th 1930). For a disclaimer, however, which is tantamount to an abandonment, no notice is required. Had this experienced referee intended an assignment of the claim to the Mullins, I am sure that he would have required notice. His failure to give notice is an indication that he considered the transaction to be an abandonment.

 The wording of the petition which speaks only in terms of "disclaim", the intention of the referee as gleaned from his failure to give notice where he should have known it was required, as well as the language of the petition and the order which indicate that the corporation is to be a recipient, all compel the conclusion that the transaction effected September 5, 1963 was in effect an abandonment of the tort action to the corporation and was not an assignment of it to the Mullins personally.

My conclusion, therefore, is that the cause of action presently reposes in the corporate entity of Tri-States Automotive Warehouse which although liquidated in bankruptcy survives pursuant to Virginia Code § 13.1–101 for the purposes of maintaining suits. Since no right of action exists in the Mullins either individually or as assignees of a claim of the corporation, their individual suits must be dismissed for failure to state a claim upon which relief may be granted. The suit by the corporation is also dismissed, but for lack of subject matter jurisdiction.[4]

Several other issues have arisen in the course of this litigation which I did not pass upon since in reaching my decision it was unnecessary to do so. Principal among these are the questions of assignability of the claim and the applicable statute of limitations. Both of these issues are dependent upon survivability

4. Whether the Mullins prosecute the claim in the corporate name which in effect they have done in the suit styled Tri-States Automotive Warehouse, Inc. v. First National Exchange Bank, et al. or whether they bring a suit in their own names on behalf of the corporation, the jurisdictional result will be the same. In the latter case, the corporation would have to be named as the real party in interest and its presence would necessarily destroy diversity.

of the action under Virginia law. Since it is anticipated that the plaintiff Tri-States Automotive Warehouse may now wish to prosecute the claim in the Virginia courts and since the question of statute of limitations and other matters dependent upon state law may materially affect its right of recovery, I have declined to express an opinion on them.

An order will be entered dismissing all three suits for the reasons stated in the foregoing opinion.